USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 3/31/26

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |
|---|---|
| **KGB NY LLC,** | |
| **Plaintiff,** | **1:23-cv-10979 (ALC) (RFT)** |
| -against- | |
| **ROBERTO GUZMAN, et al.,** | **OPINION & ORDER** |
| **Defendants.** | |

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff KGB NY LLC brings this action for copyright infringement of its photographs and furniture designs, tortious interference with business relations, unjust enrichment, and breach of fiduciary duties. Before the Court is KGB's motion for partial summary judgement, pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, KGB's motion is **GRANTED in part and DENIED in part.**

## BACKGROUND

### I.    Factual History

Plaintiff KGB NY LLC "Plaintiff" or "KGB") is a furniture designer and manufacturer. ECF No. 112 ¶ 1. KGB was formed in January 2009. *See id*. ¶ 3. Christiaan Bunce ("Bunce"), David Khouri ("Khouri"), and Roberto Guzman ("Guzman") were founding members and managers of KGB. *See id*. ¶¶ 4-9. On July 16, 2018, Bunce, Khouri, and Guzman entered into a Purchase Agreement that reallocated the shares each individual owned in KGB. *See id*. ¶¶ 10-12. Prior to the Purchase Agreement, Guzman and Khouri collectively owned 41 of the total 100 shares in KGB, and Bunce 50 of the total 100 shares in KGB. *See id*. ¶¶ 11-12; *see also* ECF No. 105-

Exhibit B. The remaining nine shares were not yet issued. *See* ECF No. 105- Exhibit B. Following the Purchase Agreement, Khouri came to own 4 of KGB's 100 total shares, Guzman came to own 5 of the total shares, and Bunce came to own 91 of the total shares. *See* ECF No. 112 ¶¶ 10-12. Khouri and Guzman remained members of KGB from founding until July 2023. *See id*. ¶¶ 13-14.

Around January of 2010, KGB engaged a photographer named Alan Tansey who took photographs of KGB's furniture for marketing materials, KGB's website, and KGB's e-mail blasts. *See id*. ¶¶ 16-17. At some point in time, Tansey was engaged pursuant to a "Work for Hire Agreement" whereby "all right, title, and interest in and to the copyright in the photographs used by KGB on its website, marketing, and promotional materials were granted exclusively to KGB." *See id*. ¶ 17. The parties dispute when the Work for Hire Agreement was executed. *See id*. During their time at KGB, Khouri and Guzman received and had access to photographs taken by Alan Tansey on behalf of KGB. *See id*. ¶ 18. In June of 2023, KGB registered a copyright in four photographs: "Upper East Side Townhouse Staircase," "KGBL Showroom Exterior," "Tribeca Loft Dining Table," and "West Chelsea Loft Living Space." *See id*. ¶¶ 19, 22, 25, 28(hereafter referred to as the "Copyrighted Photographs"). As of at least June of 2023, the Copyrighted Photographs were published on Khouri's personal website, Guzman's personal website, and on CULTUM's website without KGB's consent or permission. *See id*. ¶¶ 19-30. Khouri and Guzman allege the photographs were used with authorization from the photographer Alan Tansey. *See id*. In June of 2023, Khouri and Guzman received cease-and-desist letters from KGB regarding the unauthorized publication of the Copyrighted Photographs and thereafter removed the photographs. *See id*. ¶¶ 31-34. On July 10, 2023, KGB called a special meeting of shareholders and Khouri and Guzman were expelled for alleged breaches of duties of loyalty, good faith and fair dealing, and default/abandonment. *See id*. ¶ 36.

2

Andrew Griffen worked at KGB between March 2019 and March 2020. *See id*. ¶ 40. Khouri and Guzman met Griffen during their time at KGB. *See id*. ¶ 39. Today, Khouri, Guzman, and Griffen are equal one-third members in a new business venture, Guzman Khouri LLC. *See id*. ¶ 43. Guzman and Khouri sent promotional e-mail blasts marketing their new business ventures to an e-mail list primarily generated by Griffen. *See id*. ¶ 38. One of such email blasts sent on April 23, 2024 was sent to at least one of KGB's contacts—its accountant, Jonathan Cohen. *See id*. ¶ 42.

## II.     Procedural History

On December 19, 2023, KGB filed its complaint, initiating this action against Defendants Guzman, Khouri, and CULTUM (collectively the "CULTUM Defendants"). *See* ECF No. 1. On May 30, 2024, KGB amended the complaint, adding Squarespace as a defendant. *See* ECF No. 27. The Amended Complaint asserts six causes of action for: (1) copyright infringement of the photographs against the CULTUM Defendants; (2) copyright infringement of the furniture designs against Guzman and Khouri; (3) contributory infringement of the furniture designs against Squarespace; (4) tortious interference with business relations against the CULTUM Defendants; (5) unjust enrichment against the CULTUM Defendants; and (6) breach of fiduciary duties against Guzman and Khouri. *See* AC at 5–10. All the copyright infringement claims are brought under the U.S. Copyright Act, 17 U.S.C. § 501. *See id.* at 5–8.

On June 14, 2024, the CULTUM Defendants answered and brought a counterclaim for a declaration of non-liability. *See* ECF No. 30. KGB answered the counterclaim on June 28, 2024. *See* ECF No. 32.[1] Magistrate Judge Robyn F. Tarnofsky set a briefing schedule for KGB's anticipated motion for summary judgement against the CULTUM Defendants. *See* ECF No. 96.

---

[1] On January 31, 2025, the Court granted Defendant Squarespace leave to file its motion to dismiss the claim against it. *See* ECF No. 76. Defendant Squarespace thereafter filed its motion to dismiss on February 21, 2025. *See* ECF Nos. 94-95.

On May 12, 2025, KGB filed its motion for partial summary judgement and accompanying memorandum of law. *See* ECF Nos. 104, 107. That same day, KGB also filed its Rule 56.1 Statement of Material Facts. *See* ECF No. 105. Along with this, KGB filed a letter motion to seal Exhibits C and D to its Rule 56.1 Statement.[2] *See* ECF No. 103. On June 26, 2025, the CULTUM Defendants filed their opposition to KGB's motion for partial summary judgement. *See* ECF No. 111. That same day, the CULTUM Defendants filed their Rule 56.1 Counterstatement and Response along with their supporting declaration. *See* ECF Nos. 112, 113. On July 24, 2025, KGB filed its reply memorandum of law in support of its motion for partial summary judgement. *See* ECF No. 114. The Court considers the motions fully briefed.

KGB now moves for partial summary judgement on its claims for (1) copyright infringement of the photographs against Defendants Roberto Guzman ("Guzman"), David Khouri

---

On September 18, 2025, this Court issued an Opinion and Order granting Defendant Squarespace's motion to dismiss Count Three of the Amended Complaint—the claim for contributory infringement of the furniture designs against Squarespace. *See* ECF No. 115. Further, the Court *sua sponte* dismissed Count Two of the Amended Complaint—the claim for copyright infringement of the furniture designs against non-moving defendants Guzman and Khouri. *See id.*

[2] The Court recognizes that there is a strong First Amendment presumption of public access to judicial documents and proceedings. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–20,123–24 (2d Cir. 2006). However, court documents may be sealed if "specific, on the record findings are made demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 13–14 (1986) (quoting *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984)). After careful review of the parties' submissions, including their letter motion to seal and the proposed redactions, the Court concludes that the parties' unopposed letter motion should be **GRANTED**. On February 26, 2025, the Court granted the parties' Confidentiality Stipulation of Protect Order. Pursuant to such order, the parties were allowed to designate as "Confidential" items reflecting sensitive business or financial information as well as maintain all personally identifying information securely and confidentially. The deposition testimony here includes references to documents marked as confidential and include personally identifying information. "Weighing countervailing factors against the public's presumptive right of access, the Court finds that the asserted interests in protecting non-party privacy . . . and banking records outweighs the public's right to access certain portions of the materials at issue." *Sec. & Exch. Comm'n v. Telegram Grp. Inc.*, No. 19-CV-9439 (PKC), 2020 WL 3264264, at *6 (S.D.N.Y. June 17, 2020). The Court reserves the right to request additional briefing on whether these documents should remain sealed at a later stage in this litigation.

"Khouri," and with Guzman, collectively the "Individual Defendants"), and CULTUM Studio ("CULTUM," and with the Individual Defendants, the "CULTUM Defendants"); (ii) breach of fiduciary duties against the Individual Defendants; and (iii) tortious interference with business relations against the CULTUM Defendants. *See* ECF No. 104.

<strong>LEGAL STANDARD</strong>

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." *Cortes v. MTA New York City Transit*, 802 F.3d 226, 230 (2d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson*, 477 U.S. at 248. Speculation, conclusory allegations, and mere denials are not enough to raise genuine issues of fact. *See National Union Fire Ins. Co. of Pittsburgh, Pa. v. Walton Ins. Ltd.*, 696 F. Supp. 897, 900 (S.D.N.Y. 1988). An issue of fact is "genuine" when a reasonable fact finder could render a verdict in the nonmoving party's favor. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." (internal quotation omitted).

At summary judgment, the moving party has the burden "to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). To avoid summary judgment, a party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. When the moving party has met its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Simsbury-Avon Pres. Soc'y LLC v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009). "When the

burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim. In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial." *Id.* When a motion for summary judgment is unopposed, a court "may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (quoting *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004)) (internal quotation marks omitted).

"If there are cross-motions for summary judgment, the Court must assess each of the motions and determine whether either party is entitled to judgment as a matter of law." *Gen. Ins. Co. of Am. v. Starr Indem. & Liab. Co.*, No. 14-CV-07354 (JGK), 2016 WL 4120635, at *4 (S.D.N.Y. July 22, 2016) (citing *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993)). "[W]hen both sides move for summary judgment, neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it. When faced with cross-motions for summary judgment, a district court is not required to grant judgment as a matter of law for one side or the other." *Heublein, Inc.*, 996 F.2d at 1461 (citation omitted). Instead, the court must "evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* (citation omitted).

In deciding a summary judgment motion, courts must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Niagara Mohawk Power Corp. v. Jones Chemical Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). Courts may not assess credibility, nor may they decide between conflicting versions of events because

those matters are reserved for the jury. *See Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005). However, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Id.* (citing *Anderson*, 477 U.S. at 252).

## DISCUSSION

The Court now addresses each of KGB's remaining arguments as to whether summary judgment should be granted as to the following three claims: (i) copyright infringement of the photographs against the CULTUM defendants, (ii) breach of fiduciary duties against the Individual Defendants; and (iii) tortious interference with business relations against the CULTUM Defendants.

## I.     Copyright Infringement of the Photographs Against CULTUM Defendants

"'Copyright infringement is established when the owner of a valid copyright demonstrates unauthorized copying.'" *Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 131 (2d Cir. 2003) (quoting *Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.*, 150 F.3d 132, 137-38 (2d Cir. 1998)). To prevail on a claim of copyright infringement, a plaintiff must prove two elements: (1) the plaintiff owns a valid copyright, and (2) the defendant copied "constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). To establish unauthorized copying, the plaintiff must show that the work was "actually copied" and that there was "'substantial similarity' or that 'the copying amounts to an improper or unlawful appropriation.'" *See id*. (quoting *Castle Rock Entm't, Inc.*, 150 F.3d at 137-38).

7

Here, the Parties agree KGB has established *prima facie* evidence of a valid copyright in the Copyrighted Photographs by obtaining Certificates of Registration from the U.S. Copyright Office. *See* ECF No. 27-3. *See also* ECF No. 111 at 6. KGB argues unauthorized copying is established by the fact that the CULTUM Defendants "published Plaintiff's Copyrighted Photographs without obtaining Plaintiff's consent or permission to do so." *See* ECF No. 107 at 4. In response, the CULTUM Defendants argue that the timing of the registration should be considered in determining whether the copying was unauthorized. *See* ECF No. 111 at 6. Specifically, the CULTUM Defendants argue the Copyrighted Photographs were not registered until months after the CULTUM Defendants first copied the photographs and that such use ended immediately upon being notified that KGB obtained copyright registrations for the photographs. *See id*. The Court is not persuaded by the Defendants' argument to the extent it turns on registration for copyright protection.

"'The Copyright Act safeguards copyright owners, *irrespective of registration*, by vesting them with exclusive rights upon creation of their works and prohibiting infringement from that point forward.'" *Whistleblower Prods., LLC v. St8cked Media LLC,* No. 18-CV-5258 (PKC)(CLP), 2019 WL 3082482, at *4 (E.D.N.Y. July 15, 2019) (emphasis included) (quoting *Fourth Estate Pub. Benefit Corp. v. Wall Street.com,* LLC, 139 S. Ct. 881, 891 (2019). Indeed, "[f]or any work created after January 1, 1978, copyright automatically inheres upon the work's creation." *Id*. (citing to 17 U.S.C. § 102(a)). See id. ¶¶ 13-14. As such, to the extent the CULTUM Defendants argue their use of the photographs was authorized because KGB did not register the photographs, this argument is unavailing as registration is not required for copyright protection under these circumstances.

KGB is correct that the CULTUM Defendants concede to unauthorized copying of the photographs to some extent. *See* ECF No. 111 at 6 ("[A]ny arguable infringement only occurred for a few days in June 2023."). However, the CULTUM Defendants allege their use of the photographs was initially authorized by the photographer Alan Tansey himself, and once KGB gained copyright to the photographs and informed them, Defendants removed the photographs. *See* ECF No. 112. ¶¶ 19-30. Further, Tansey was engaged pursuant to a "Work for Hire Agreement" whereby "all right, title, and interest in and to the copyright in the photographs used by KGB on its website, marketing, and promotional materials were granted exclusively to KGB." *See id*. ¶ 17. But the parties dispute when the Work for Hire Agreement was executed. *See id.* While KGB claims the effective date of the agreement is January 1, 2010, Defendants believe the agreement was not executed until May 2023. *See id.* Even if the agreement was not executed until May 2023, the CULTUM Defendants admit to the unauthorized copying of the photographs between May and June of 2023. The Court finds this to be sufficient to establish copyright infringement of the photographs. The CULTUM Defendants argue their use of the photographs was "innocent" and only lasted a few days. *See* ECF No. 111 at 6. While this argument is insufficient to avoid granting summary judgement to KJGB on the copyright infringement claim, such state of mind is relevant in determining damages.    Under the Copyright Act, the minimum and maximum for statutory damages changes based on whether the infringement is considered innocent or willful. *See Golden v. Michael Grecco Prods.*, 524 F. Supp. 3d 52, *88, 2021 U.S. Dist. LEXIS 43701, **21-22 (E.D.N.Y. March 9. 2021). While a "copyright holder bears the burden to prove willfulness; an infringer bears the burden to prove innocence." *See id*. Indeed, "[a]n innocent infringer must demonstrate 'both (1) a subjective good faith believe that his conduct was innocent, and (2) that his belief was objectively reasonable under the circumstances.'"" *See id*. (internal citation omitted).

As such, there exists a disputed issue of fact as to the timing of the execution of the work for hire agreement which goes to Defendants' state of mind and damages. A reasonable juror could find Khouri and Guzman to be innocent infringers based on their belief that they gained the right to use the photographs from the photographer. As such, the Court **GRANTS** summary judgement on Count One for copyright infringement but finds there are still disputed material facts that go to the issue of damages.

## II.     Breach of Fiduciary Duties Against the Individual Defendants

KGB alleges the Individual Defendants' unauthorized publication of the Copyrighted Photographs violated the fiduciary duties owned to Plaintiff, namely the duty of care and the duty of loyalty. *See* ECF No. 27 at ¶¶ 16-17. "To establish a breach of a fiduciary duty, a plaintiff must prove the existence of a fiduciary relationship, misconduct by the defendant, and damages directly caused by the defendant's misconduct." *Berman v. Sugo LLC*, 580 F.Supp.2d 191, 204 (S.D.N.Y. 2008) (quoting *Kurtzman v. Bergstol*, 40 A.D.3d 588, 590 (N.Y.App.Div.2007)). A fiduciary relationship exists under New York law "'when one [person] is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'" *Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 599 (2d Cir. 1991) (quoting *Mandelblatt v. Devon Stores, Inc.*, 132 A.D.2d 162, 168 (1st Dep't 1987)). "Under New York law, the managing member of an LLC owes fiduciary duties to the LLC and its fellow members." *Gan v. GSUIG Real Est. Member LLC*, 797 F.Supp.3d 69, 96 (E.D.N.Y. 2025) (quoting *McKinnon Doxsee Agency, Inc. v. Gallina*, 187 A.D.3d 733, 733 (2d Dep't 2020)).

The Individual Defendants argue that because they were not managing members, they do not owe a fiduciary duty to the LLC. *See* ECF No. 111 at 6-7. The Individual Defendants point to the Purchase Agreement between the parties which provides that "Bunce shall be the managing

member and shall manage the day-to-day business and affairs of the Company and MFG and Khouri and Guzman shall, for a period of not less than sixty (60) days after this Agreement is entered into, assist Bunce in the management and operation of the Company and MFG." *See id*. KGB argues to the contrary, pointing to Mr. Bunce's declaration stating that "From February 2017 until July 2023, Mr. Khouri, Mr. Guzman, and I were the sole members and managers of KGB." *See* ECF No. 114 at 3. Article 4 of the Operating Agreement provides that the Individual Defendants were founding members of managers of KGB. *See* ECF No. 111 at ¶¶ 6-9. Following a Purchase Agreement entered into on July 16, 2018, Individual Defendant Khouri came to own 4 of KGB's 100 total shares while Individual Defendant Guzman came to own 5 of the total shares. *See* ECF No. 112 at ¶¶ 11-12. Prior to this agreement, Guzman and Khouri collectively owned 46 shares. *See id*. Following the Purchase Agreement, Mr. Bunce came to own 91 of KGB's 100 total shares. *See id*. at ¶ 10. While it has been conceded that the Individual Defendants remained members of KGB following the enactment of the Purchase Agreement until July 2023, it is not clear whether the Individual Defendants were still managers or managing members. *See id*. at ¶¶ 13-14.[3] Therefore, there remains a disputed issue of material fact as to whether the Individual Defendants were managing members of KGB and thus even owed KGB a fiduciary duty. As such, the Court **DENIES** summary judgement as to Count Six.

### III.    Tortious Interference with Business Relations Against the CULTUM Defendants

Under New York Law, a plaintiff suing for tortious interference with a business relationship must prove that "'(1) there is a business relationship between the plaintiff and a third party; (2) the defendant, knowing of that relationship, intentionally interferes with it; (3) the defendant acts with

---

[3] The Court further notes that in the Complaint, KGB alleges the Individual Defendants acquired the Copyrighted Photographs in the court of acting as *members* at KGB, not managers or managing members. *See* ECF No. 27 at ¶ 15.

the sole purpose of harming the plaintiff, or, failing that level of malice, uses dishonest, unfair, or improper means; and (4) the relationship is injured.'" *Hamdami, S.A. v. Xerox Corp.*, 272 F. Supp. 3d 587, 602 (S.D.N.Y. 217) (quoting *Goldhirsh Grp., Inc. v. Alpert*, 107 F.3d 105, 108-09 (2d Cir. 1997)). "'[C]onduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship.'" *Id*. (quoting *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 785 N.Y.S.2d 359 (2004). KGB argues that the promotional email the CULTUM Defendants sent to the accountant Jonathan Cohen is sufficient to establish tortious interference with KGB's business relationship with Mr. Cohen. *See* ECF No. 114 at 4. The Court disagrees. KGB fails to put forth uncontroverted material facts to prove that the CULTUM Defendants intentionally interfered with KGB's relationship with the accountant Jonathan Cohen or that the CULTUM Defendants were motivated to harm KGB in making a relationship with the account by sending the promotional email. As such, there remain genuine issues of material fact, and the Court **DENIES** granting summary judgement as to Count Four.

## IV.    CULTUM Defendants' Counterclaim and Affirmative Defenses

The Court construes KGB's final argument as an additional prayer for relief. KGB argues that the CULTUM Defendants' counterclaim and affirmative defenses are without merit and should be stricken. *See* ECF No. 107 at 8. Defendants' counterclaim of non-liability is not directed at KGB's claim for copyright of the Photographs but rather at KGB's claim for copyright infringement of the unregistered furniture designs. *See* ECF No. 111 at 8; *see also* ECF No. 30. As the Court has since dismissed that claim, the Court **DENIES** KGB's request to strike Defendants' Counterclaim as **MOOT**.

KGB further challenges all three of the CULTUM Defendants' affirmative defenses. *See* ECF No. 107 at 7-8. KGB challenges the first two affirmative defenses—(1) that the Complaint is barred by the doctrines of laches, acquiescence, estoppel and waiver,  and (2) that KGB had unclean hands and fraud –  on the basis that they fail to allege the requisite elements of each defense. *See id*. The CULTUM Defendants argue KGB is making untimely Rule 9(b) pleading arguments in a motion for summary judgement. The Court agrees. As such, the Court **DENIES** KGB's request to strike the CULTUM Defendants' first and second affirmative defenses.

To the extent Plaintiffs move for summary judgment on these claims, the motion is denied. The declarations submitted by Defendants are sufficient to set forth a factual basis for the affirmative defenses. There remain disputed issues of material fact regarding the defenses.

KGB also challenges the CULTUM Defendants' third affirmative defense which alleges Plaintiff is not entitled to relief because the CULTUM Defendants "own prior rights" in the works at issue. *See id*. at 8. KGB argues that the "work for hire" agreement with the photographer invalidates this affirmative defense because the CULTUM Defendants cannot establish they had any ownership or licensing rights in the works at issue. *See id*. This turns on the same disputed issue of material fact regarding the "work for hire" agreement. In any event, "[t]his defense is directed at [KGB's] claims of rights to certain furniture designed identified in Claim 2 of the Amended Complaint." ECF No. 111 at 9. As the Court has since dismissed that claim, the Court **GRANTS** KGB's request to strike Defendants' third affirmative defense as it pertains to the furniture designs as **MOOT**.

## CONCLUSION

For the foregoing reasons, KGB's motion for summary judgment is hereby **DENIED in part and GRANTED in part.** The Court grants summary judgment on KGB's copyright

13

infringement claim but finds there are still material facts in dispute that go to damages. The Court declines to grant summary judgment on the remaining claims. The Clerk of the Court is respectfully directed to terminate the pending motions at ECF Nos. 103 and 104.

**SO ORDERED.**

**Dated: March 31, 2026**

       **New York, New York**

                  **ANDREW L. CARTER, JR.**

                  **United States District Judge**